IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHOKCHAI KRONGKEIT,

  Petitioner,      No. 2:11-cv-2354 GEB CKD P

 vs.

MATTHEW CATE,

  Respondent.     FINDINGS AND RECOMMENDATIONS

_____/

  Petitioner is a California prisoner proceeding with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He is serving a sentence of 40 years imprisonment following a plea of guilty to five counts of forcible lewd and lascivious conduct with a child under the age of fourteen. Petitioner challenges his guilty pleas.

I. Standards

  An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

/////

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[1]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

"[W]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

---

[1] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  As long as "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded.  Harrington, 131 S. Ct. 786.

II. Background

On direct appeal, the California Court of Appeal summarized the facts related to petitioner's claims as follows:

> A detailed recitation of the facts underlying the offenses is unnecessary in view of the issues raised on appeal.  Suffice it to say that defendant sexually abused a female relative beginning when she was five years old and continued until she was 15 years old.  Defendant admitted some of the conduct in a pretext call with the victim.  He later admitted additional conduct when interviewed by the police after his arrest.
>
> Defendant initially retained counsel, Harlan Antler.  Antler was relieved after six months.  Defendant retained new counsel, C. Emmett Mahle, who represented defendant at the preliminary hearing.  One day prior to trial, defendant discharged Mahle and requested appointed counsel.  The court appointed Ron Castro to represent defendant and rescheduled trial.  A few days before the new trial date, defendant sought substitute counsel, and after a hearing, Judge De Alba denied the motion.  On the first day of trial, defendant's motion to exclude his confession based on a *Miranda* [footnote omitted] violation was denied.  During voir dire on the third day of trial, defendant entered his guilty plea to five counts in exchange for the stipulated determinate term of 40 years and dismissal of the remaining 12 counts of child molestation.  [Footnote omitted.]  At the entry of plea hearing, defendant confirmed that he had not been threatened or otherwise induced to enter his plea.  Sentencing was scheduled to take place in three months.
>
> At sentencing, defendant sought substitution of counsel.  The court conducted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118.  Defendant claimed, inter alia, that prior to entering his

plea, Attorney Castro had explained that because he could not win the case, defendant should commit suicide.

In responding, Attorney Castro initially noted that defendant had made the same claim a number of times. Castro denied that he so advised defendant. Castro described the interaction differently. During discussions with defendant at the jail, defendant had complained "how horrible it was to be in jail" and so horrible that people were committing suicide in there." Castro recalled one conversation as follows. Defendant asked "'Is there anything I can do to not go to state prison?' [¶] And I said, 'No, not unless you want to take the way out like the other guys did.' [¶] 'You mean kill myself?' [¶] Basically we both laughed and he said 'I'm not doing that.' [¶] I said, 'I know you're not doing that.' [¶] So I mean it might have been ill advised, but I definitely wanted to impress upon him how dire the circumstances were." Castro tried to impress upon defendant the fact that his chances of avoiding conviction and indeterminate life terms were slim to none in view of defendant's statements during the pretext call and his interrogation. Castro noted that defendant "would never discuss the facts of the case with him." Castro believed he could continue to represent defendant effectively. Defendant replied that he could no longer trust Castro.

Although concluding that Attorney Castro had properly and effectively represented defendant and could continue to do so, the court relieved Castro as defendant's attorney apparently finding a breakdown in the relationship. The court commented that "based upon [defendant's] letters to [the court] and the importance with which we would proceed with judgment and sentence, that it would be impossible for this Court to stand by and allow Mr. Castro to be your counsel, again, given the importance of you making an intelligent, knowing, and voluntary plea to the charges previously stipulated." The court also stated that defendant would be allowed to withdraw his plea and new counsel appointed. The court said, "I find that there is sufficient good cause *based upon this motion and the concerns expressed in your letter* to withdraw your plea at this time." (Italics added.) [Footnote omitted.] The court then reconvened in open court and noted it had found good cause for defendant to withdraw his plea. The prosecutor, who had been excluded from the closed *Marsden* hearing, objected to the court's ruling, commenting that no motion to withdraw a plea had been filed, no grounds had been stated, and that the prosecution had not been permitted to opposed the motion. The court responded that it was not proceeding further on defendant's plea "given that [defendant] has to make that decision on his own and that "[*t*]*he information before this court is that his plea is not voluntary on his own.*" (Italics added.) The court stated that new counsel would be appointed who would assist defendant in either filing a motion to withdraw his plea or proceeding with sentencing on the plea. Laurance Smith was appointed represent defendant.

> Five months later, having reviewed the entire record, conversed with prior counsel (Attorneys Mahle and Castro), and interviewed defendant a number of times, Attorney Smith stated that a motion to withdraw the plea would not be filed since he believed it was his "legal obligation not to present motions which [he did] not believe in good faith are supported by adequate legal grounds." Smith noted that defendant did not agree and wanted new counsel.
>
> After conducting a *Marsden* hearing, the court denied defendant's motion for substitute counsel to replace Attorney Smith. Smith represented defendant at sentencing. The court imposed the stipulated sentence of a determinate term of 40 years.

Answer, Ex. A at 2-6.

III. Analysis

    A. Involuntary Guilty Plea

Essentially, petitioner's primary claim is that the trial court violated petitioner's right to due process under the Fourteenth Amendment by refusing to let him withdraw his guilty plea. The Due Process Clause of the Fourteenth Amendment requires that a guilty plea be both voluntary and intelligent. Boykin v. Alabama, 395 U.S. 238, 242 (1969). A guilty plea is voluntary and intelligent when the accused is made aware of the nature and elements of the charges against him, the possible punishment he faces, and understands that he is waiving his constitutional rights to avoid compulsory self-incrimination, to confront his accuser, and to a trial by jury. Brady v. United States, 397 U.S. 742, 749 (1970); Boykin, 395 U.S. at 242-43. Put another way, "[a] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . ., misrepresentation . . ., or [improper promises]." Brady, 397 U.S. at 755.

Petitioner does not assert he was not aware of the consequences of his pleading guilty, nor does he indicate his plea was induced by threats, misrepresentation or improper promises. Rather, he indicates that because of his poor relationship with attorney Castro, petitioner felt he had no alternative but to accept the plea deal offered by the district attorney:

"[i]f not for the hopelessness induced upon petitioner, he absolutely would not have pled guilty to the charges at that time." Pet at 9.[2] But, petitioner fails to point to anything suggesting attorney Castro did not provide petitioner with effective assistance, as Mr. Castro was required to do under the Sixth Amendment. For example, petitioner fails to point to anything suggesting Mr. Castro failed to obtain evidence favorable to petitioner to the extent such evidence was available. It is quite possible that petitioner felt "hopeless" with Mr. Castro as his counsel. But, petitioner fails to point to anything indicating that his "hopelessness" was not more a result of the evidence petitioner knew was against him rather than any reasonable measure Mr. Castro failed to employ as defense counsel. While attorney Castro's comment that petitioner would only avoid state prison by committing suicide may have been, as Castro put it, "ill advised," and may have warranted his being removed as petitioner's counsel, it does not render petitioner's guilty plea involuntary or unintelligent.

Because petitioner fails to point to anything suggesting the plea of guilty he entered was either involuntary or unintelligent, petitioner's first claim should be rejected.

B. Ineffective Assistance of Counsel

Petitioner asserts he received Constitutionally inadequate representation from both his trial counsel and counsel on direct appeal. The standard for judging ineffective assistance of counsel claims comes from Strickland v. Washington, 466 U.S. 668 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. Second, a defendant must affirmatively prove prejudice. Id. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[2] With respect to documents filed in this action, the page numbers referenced are those assigned by the court's electronic document system.

proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

With respect to trial counsel Castro, petitioner again points to his acrimonious feelings with respect to Castro based on comments made by him.  But, again, petitioner fails to point to anything suggesting Castro committed any unprofessional errors which prejudiced petitioner's case.

Petitioner claims attorney Smith was ineffective after he replaced Castro because he failed to file a motion to withdraw petitioner's guilty plea.  Petitioner raised this claim on direct appeal.  The California Court of Appeal, the last court to issue a reasoned decision with respect to the claim, found petitioner had not demonstrated that the motion to withdraw would have been granted had attorney Smith raised it.  Therefore, the court found petitioner failed to demonstrate prejudice.  As indicated above, petitioner has not shown that his guilty plea was either involuntary or unintelligent.  Therefore, there is no basis to vacate the plea under federal law.  Petitioner asserts there is a basis under California law for vacating the plea which concerns whether correct procedures were employed when the trial court initially indicated it would vacate petitioner's plea but later changed its mind.  However, the Court of Appeal found no state law error committed by the trial court.  Because federal courts are generally bound by a state court's interpretation of state law, e.g. Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000), the court's opinion as to whether there was a violation of state law would be inconsequential.  Since there is no basis for finding that a motion to withdraw petitioner's plea of guilty would have been granted had attorney Smith made that motion, the court cannot find that Smith was Constitutionally ineffective for failing to bring the motion.

Finally, petitioner asserts that appellate counsel was ineffective for failing to raise his first claim, that his guilty plea was involuntary, on direct appeal.  Because the first claim lacks merit, petitioner cannot demonstrate appellate counsel's actions prejudiced petitioner.  For these reasons, petitioner's claim of ineffective assistance of appellate counsel should be rejected.

IV. Conclusion

For all of the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 31, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
kron2354.157